DECISION
These consolidated tax appeals were tried to the court without the intervention of a jury. The parties, in addition to presenting live testimony, submitted a twenty-one paragraph "Stipulation of Agreed Facts" which this Court incorporates by reference.
The parties agree that the sole issue for the court to decide, at this juncture, is the fair market value of a 28 acre parcel of property in Newport known as "Edgehill."
In 1992, the city of Newport engaged an independent appraisal contractor, Saver-Systems, to perform a city-wide re-evaluation of property. Saver-Systems assessed Edgehill at a value of $10,862,500.00, but the tax assessor, Mr. Booth, explained that he was uninformed as to what approach the company utilized. Mr. Booth testified that he "honestly felt ten million dollars might have been accurate . . . when [the property] was a viable rehabilitation center." Edgehill had been a treatment center for individuals seeking professional care for alcohol abuse. The removal of that operation from the premises rendered the property less valuable, according to the tax assessor. In 1997, the assessment was reduced to $6,600,000.00. Finally, in 1998, after the demolition of certain buildings which could no longer be taxed as improvements, the assessment was lowered to $3,600,000.00.
Plaintiff A.L. Ballard of Houston, Texas, testified that institutional buildings which had "no function or value" and were "ugly" were demolished. The contents of these buildings, e.g., beds and hospitals and kitchen equipment were offered to charities by Mr. Ballard.
Plaintiff's expert, Peter M. Merritt, was a certified appraiser (of both commercial and residential properties) with vast experience. He set the value of Edgehill, using the income approach, at $2,550,000. Defendant's expert, Ray C. Schaefer, using the comparable sales approach, set the value at $6,940,000.
The irregularly — shaped parcel in question is comprised of 28.628 acres divided into 3 segments. The first segment is improved by a three story modern brick building for office and dormitory space, with a one story medical wing. Additional office space is available in a 1-story recreational building which also houses a gymnasium. Upon the next segment is a 2.5 story, "turn of the century mansion." The third segment containing two cottages and farm buildings is referenced as the "Swiss Village."
Plaintiff's expert, Mr. Merritt describes the property as atypical in the market place with a high degree of functional obsolescence. In 1982, the modern buildings were constructed to house an office, dormitory and medical wing for use as an alcohol abuse rehabilitation center. Of great impact upon the property's value are zoning restrictions limiting its use to a non-profit organization which will provide services to, or for the benefit of, physically disabled or challenged persons. As Mr. Merritt points out; "the field of prospective buyers is narrowed to those with a specific use which the property basically satisfies as is and falls within the current zoning parameters; or, to a developer with capital to make major renovations for an alternate use and a potentially protracted and expensive permitting process before the zoning board of review."
In evaluating the property Mr. Merritt determined that the most reliable method to employ was the income capitalization approach. Because of the uniqueness of the property and the distressed real estate market at the time, neither the cost approach nor the comparable sales methodology would yield a reliable result.
The expert researched rental rates in the market place for income-producing property and compared them to the contract rents at Edgehill. He calculated the price per square foot for gross building area and net leasable area and concluded that Edgehill's value by income was $2,550,000.
Although Mr. Merritt considered the sales comparison approach, his extensive research failed to reveal sales sufficiently similar to permit reliable analysis. Because Edgehill and the "comparable" sales were so unique, Mr. Merritt omitted the adjustment process and calculated the range of price said per square foot of the gross building area of the other properties. The range in value yielded was $1,815,000 to $12,785.000. The comparable sales included the former Cranston General Hospital, the former St. Aloyosius Home, and the former High Point Alcohol Rehabilitation Center.
Plaintiff's counsel also requested appraiser Paul J. Hogan to do a "limited" appraisal of Edgehill to estimate its market value on an "as is" basis as of December 31, 1994. (The evaluation was performed in October 1999 when market conditions were considerably stronger than in 1994). Mr. Hogan noted that in 1994 the market for Newport estate homes was extremely limited, no home having been sold in 1993 or 1994 for more than one million dollars. He felt that it would be prohibitively expensive to remove the medical complex and restore Edgehill to estate condition. Thus, its highest and best use, as improved, was as a physical rehabilitation center. Mr. Hogan determined that the comparable sales approach was the pertinent methodology to apply but he could find only one comparable. He used the sale of the former High Point Rehabilitation Center now known as the Tower Hill Rehabilitation Center, on Tower Hill Road in North Kingstown. This property, which was sold for one million dollars in September of 1993, had been constructed in 1982 and 1983 as an in-patient alcohol rehabilitation facility. It consists of five free-standing one-story medical buildings interconnected by heated breezeways. The total square frontage of the buildings is 25,358 square feet and they sit upon 18.53 acres of land.
In his conclusion Mr. Hogan states: "In comparing hospital like properties the most appropriate unit of comparison is capacity, as is measured by patient beds." He then calculated a per bed price at High Point of $20,833 for each of the 48 beds based on the million dollar sale. Hogan concluded that since Edgehill was authorized by Zoning Board to have 160 beds (which it did not in reality have), each with a value of $20,833, Edgehill was worth $3,333,280.
The court has great difficulty accepting this opinion of value because it does not regard the High Point sale to be a true comparison. The court's hesitation in endorsing the comparable sales methodology is significantly increased by the fact that only one sale was used. Most importantly, Edgehill is situated on a beautiful park-like Newport estate with turn of the century construction. The medical buildings were not constructed until the 1980's. That is when all of High Point was built on a highway in North Kingstown for the express purpose for operating an in-patient rehabilitation center.
The only thing these two properties have in common is that for some time both were used for rehabilitation centers. The properties being compared, in the court's estimation, and based upon the evidence, have no like attributes aside for their one-time use. Therefore, the court rejects the three million dollar figure as representative of the true value of Edgehill.
The defense expert, Ray C. Schaeffer opined that the sales comparison approach was the only valid approach and he set Edgehill's value at $6,940.000. Despite the fact that the land with improvements is assessed as a whole, Mr. Schaeffer evaluated the mansion and 160,000 square feet of supporting land separately. He stated: "it is an assumption that the property will be subdivided from the 28.6 acres site and be marketed as an entity separate from the health care facility." There is no evidence whatsoever to support such an assumption. Even if there was such evidence, it is a totally improper consideration as the issue is the fair assessment of the property in the condition which it existed.
Having impermissibly severed off the mansion as a separate valuation, Mr. Schaeffer then proceeds to assess the "heath care" portion of the property. Despite his awareness of the deed restriction limiting use of the property to handicapped persons, he states that it is "an assumption of this appraisal that the ownership entity could successfully petition the courts for relief from the restriction."
Clearly one can not give a valid opinion of the fair cash value of any property by making assumptions that the owner will, in the future, be able to expand the use by obtaining relief from deed or zoning restrictions.
There is no sound legal basis, based on the credible evidence, for this expert's opinion and therefore it cannot be accepted by the court.
In the court's opinion the most comprehensive, competent and credible evaluation of the full and fair cash value of Edgehill is that of expert Merritt. His appraisal report is thorough, very detailed, and based on sound methodology. Mr. Merritt's in-court testimony reinforced the conclusions set forth in his report. Accordingly, the court, endorsing the Merritt valuation which is supported by the credible evidence, declares that the full and fair cash value of Edgehill during the years in controversy was $2,550,000.00.